May it please the court, David Shaughnessy appearing for Jorge Rivera. If I may, I'd like to reserve three minutes for rebuttal time. Sure. Thank you. Just to clarify things a bit, there are a lot of witnesses in this case, but the three main participants that I'm going to talk about, I'll give you those names. It's Mr. Rivera, Rivera, his living companion, Sanchez, and Sanchez's daughter, Castreon. Those are the three names that I'll be talking about primarily. So this case, Mr. Rivera was charged and convicted with helping Castreon, who was the architect of this brand fraud scheme, helping her spend money to buy two automobiles. The legal defense that he raised was that the money that was used was legal gambling winnings, not fraud money. And that's what he knew, his knowledge. He disputed whether he had guilty knowledge. But he understood that it was gambling money, that's what he thought, and that's what he was told. That's what the evidence presented. But it was presented solely, or almost solely, through Castreon, the witness Castreon. She testified, she was the only defense witness, and she testified about her gambling, compulsive gambling, in some detail. And her extended losses, all of that came in through her testimony. It did, your honor. All of that came in through Castreon, either on direct or cross. So Castreon testified that the money that she used, that was used for these cars, and she said it was her money, there's no real dispute about that, it was her money. Well, it was her money, depending on how you want to look at this entire scheme. Because she had no other apparent source of income other than the scheme, and she admits to these enormous losses at the casino, and to the other money that she spent on the outside, all of it coming from the same source. So yes, she might have had some gambling winnings at some point, but basically everything came from the scheme itself. Well, that gets to the core question, so I'm glad you brought that right now, Judge Stahl, because that is really the issue. And that really, what you're saying is a conceivable, a plausible view under the post-FERA definition of proceeds. Pre-FERA, however, proceeds meant receipts, receipts of the fraud. It didn't mean you get the receipts from the fraud, you go to the casino, you win a lot of other money, and you spend that money on a car. That's indirectly, which is exactly the change that was made in FERA. It was broadened beyond what the Supreme Court said in Santos. I thought prior to it, it already said derived from. Derived from. But what was added was directly or indirectly. And that's the language that was seized upon by the government in closing argument, to say that no matter, exactly what Judge Stahl just said, no matter whether... Did derived from, is there case law pre-Santos saying derived from did not mean indirectly? There's not case law about, the case law, I included in my briefing the First Circuit pattern jury instruction, but what proceeds meant. It meant derived from. Derived from in the sense that it was fraud money. No, it doesn't say that, it says derived from. Derived from. I don't know, I understand that you make an argument derived from doesn't mean anything more than the actual stuff. But it's literally the words are derived from. I understand that, Your Honor. So I guess what I'm saying is, what's the basis for concluding that pre-Santos, derived from could not have meant this kind of connection, which is a one hop remove from the direct funds themselves. Because in Santos, what the Supreme Court said... Santos didn't have that issue. Santos was just about whether it was gross or net. They said it was an occasion to address whether one hop was enough. Well, that's true. What they said was they defined the word proceeds. They defined the word proceeds... With respect to an issue that didn't require them to define the word derived. The question is what does derived from mean, right? Well, I think the real question is what does proceeds mean. Why? Why isn't the question what derived from means? Because derived from, and that's what I was trying to say, derived from means if I commit a fraud... You're now saying what derived from means. I understand that. Yes. But is it possible the word derived from, words derived from, could point to something less than directly? I've seen no case law to that effect. I've read a lot of 1957 cases, a lot of 1956 cases. So in a case in which I have a single bank account and there's commingling of funds, the government pre-Santos had to identify which dollars were coming out of that bank account? Well, this is not a commingling issue. Just asking. Under 1957 or 1956. Pre-Santos, I forget, what are we under, 1957? 1957. Because 1957 has a $10,000 threshold, whereas 1956 does not. Well, we're not dealing with the $10,000, but rather with the $10,000, but there's commingling. I wouldn't imagine the government has to prove which dollar we're dealing with, if it was a dollar that came from the fraud versus a dollar that came from some other thing, when it's a single bank account with a million dollars in it. I agree. If you're talking about the fungibility of money, that's fine, Your Honor. But they still, they're required to prove that more than $10,000 of tainted money was used. They don't have to prove which particular dollars, but they have to prove that ultimately. $100,000 of tainted money goes into a million dollar account. They don't have to prove that a check coming out of that account came from the $100,000 of tainted money. Correct? Well, as I've read the, that's not the issue presented. No, I just want to say that the other circuits have had divergent views on this. What happens in cases of commingling? And there are a number of different approaches. Some take the approach of what you're saying, that there's no need to do any of that. But most of them say there has to be some, and I've mentioned these cases, I believe, in my reply brief, where they say if there's more than enough untainted money in the account that's, as you say, commingled. But I'm asking the opposite. When there's more than enough tainted money in the account, then you don't have to do the calculation. And I think the force of Judge Stahl's question is how is this case any different? Because effectively, we've got a single account with gambling winnings that are above the threshold and tainted money that's above the threshold. They're both there. So why isn't this just like a commingled account? Well, to begin with, we don't know the money. What we know is what she testified to, is that she went to the casino and won this big money, or an electronic lottery and won this big money, and used that money to buy these cars. So you could say that, I suppose, that that was somehow, how could you even say that was derived from fraud? It's a true notion that, say, on Monday, she went to the casino, won a lot of money. On Tuesday, she gave those dollars that she won on Monday to Mr. Rivera. On Wednesday, using those specific dollars, he went and bought the car. In that scenario, the fact that she has testified that this obsessive gambling she has was funded over a long period of time by all these fraudulent transactions, none of that history matters as long as she's able to say, well, on Monday, these dollars came from gambling. On Tuesday, I gave those dollars to him, and on Wednesday, he used those dollars to buy the car. In that scenario, the money laundering charge does not apply? Is that sort of the scenario you're trying to spin out? Yes, that's exactly my point. You clean up the fraud simply by saying that, fortuitously, I won yesterday, I used that, quote, clean money to buy the car, so there can't be any money laundering. We're on plain error review, as I recall, on this case. There was no objection to the court's charge, is that not correct? That's correct, Your Honor. How do you get beyond on this one, how do you get around the plain error review? The plain error, may I just before I answer that question, may I just address the point that Judge Lopez asked about that scenario, about the untainted money versus tainted money? Because if you look at the Wright case from the Seventh Circuit, they go through a couple of scenarios. It wasn't directly on point in the holding, in the facts of that case, because what happened there was there was a purchase made of $8,000 of dirty money, $2,000 of clean money, so there was not $10,000 total for the threshold to kick in, okay? But if you look at the case, what I cited in the briefs, the court asked the prosecutors at oral argument, well, what would happen if that person had taken $8,000 of dirty money, invested it in real estate, bought a piece of property, and then sold it a year later for $80,000? But that's because there's never $10,000 of tainted money. The question is, to go back to Judge Lopez's example, if I get $20,000 of tainted money, and I use that money to gamble, and I now win $100,000, if I take $20,000 of my winnings to buy a car, is that tainted money that I use to buy the car or not? No, I don't think so. Okay, well, that's serious. I don't think so, because, Your Honor, if you... I guess that is what Judge Salvage is asking, that you can just clean up the tainted money by making a profit with it through some activity that's clean. But you still have the amount that was tainted that's still tainted. It doesn't become untainted because you've made a profit. What is untainted is the profit money. But how do I know it's the profit money versus the other money? Because that's what Judge Covino... It's not Covino. She testified, and Kastriam testified in this case, that she won... There's no way... Recognize where the burdens lie, but here, the entire scheme is fraudulent. She has no other source of income. So what you're saying is that in a gambling case, that you clean up this problem simply by having some winnings on a given day, and on that day, you testify, I took that money and I gave it to him to buy my car. Yes, I think that's true. I take it there's no case that says that. I understand you say there's no case that says the opposite, but as the case comes to us, there's no case one way or the other. The closest is the right case, and that's what I was talking about, the hypotheticals that the court posed to the prosecutor in that case. The tainted money was below the threshold, and here the tainted money is above the threshold. But this is not on the holding. This is the hypotheticals that the court posed and said, what if someone takes a dollar in tainted money, buys a lottery ticket, wins a million dollars? But see, it's a dollar. They didn't say take $11,000 in tainted money and buy a lottery ticket. Dollars below the $10,000 threshold. All their hypotheticals are below the threshold. The transaction comes subsequently. That is not the transaction.  You have three minutes on the rebuttal. Okay, thank you. May it please the Court, James Pierce of the United States. Defendant's principal challenge conflates three different issues. The definition of proceeds, the evidentiary value of Castrillon's gambling testimony, and the source of the funds for the purchase of the vehicles. Now, on the proceeds question, as Judge Barron pointed out, the Santos decision really isn't what's at issue here. The question is, how is proceeds defined? And frankly, we don't make the argument in our brief, but arguably the definition post-Santos is in fact accurate because in this type of case, proceeds could well mean simply receipts. That's just not clear. And, of course, this Court, and fully in other cases, has said the definition of proceeds is essentially never subject to plain error given how fractured the Santos opinion is. The key question, as Judge Barron also pointed out, is we're talking about derived from, criminally derived property. That's a definition, in fact, that defendant never challenged either below or here on appeal. And I'm not aware of any cases that say derived from cannot look more broadly, precisely as Judge Barron pointed out. Now, the response that the defendant offers is, well, Castrione suggested that it came from her gambling winnings, and that was the defendant's source. Well, the problem with that, and I think Judge Stahl's question gets to this, is that we're here now construing the evidence in the light most favorable to the jury verdict. And the inferences to be drawn there, as precisely as the government argued below, don't believe her. You certainly can believe that she gambled away lots of money, and in fact gambled away fraud money much more than $500,000, but why would you believe her claim that she used so-called clue money? We don't think it's clue, but money that she had won. Would it matter? It wouldn't. There is some disagreement in the circuits, as defense counsel points out, but none under the facts of this case. Now, the Rutgard case, which he cites in the reply brief, is a Ninth Circuit case that suggests commingling where you don't have enough dirty money to cover the 1957 transactions could pose a problem. There you had an $8 million fund. The doctor who defended made two very large, I think $5 and $1 million transfers, but the court had only found $46,000 of tainted money. That's a problem. You don't have enough tainted money. At least we disagree with Rutgard, but in that court's opinion you're using essentially a net theory. Nothing like that here. Here you have at a minimum $2.5 million of fraud money. You have a concession by the Castrillon, if you even believe her testimony, a concession that she lost at least $500,000. And so essentially there is no clue money available to make the purchase of the vehicles. And so some circuits, I believe it's the Fourth and the Tenth, say commingling as long as you've got that dirty money, that's sufficient to prove it up and consistent with the rationale of why Congress enacted money laundering prohibitions in the first case. I don't think this circuit has a precise case on point. There's the George case that talks about commingling in the 1956 context and says that, again, the government, sort of the net theory, where as long as there's dirty money, this is sufficient. And that's, again, the position that we would take here. Again, not precisely the point that the defendant's challenge raises. That gets to that third question, the source of the fraud funds. Core argument here, the funds that purchased the car were fraud money. And all you've got is a $500,000 net loss that Castrillon talks about based already on the fact that she had taken $2.5 million. You say it's fraud money because of the arithmetic. $2,500,000 of fraud money lost $500,000 through gambling. So, ergo, this could only be fraud money? Or are you saying that because of this mingling that necessarily happened, it's inescapably tainted and hence it is fraud money? Which are you saying? I think we have to say the latter. I mean, it is possible, hypothetically, that you pointed out earlier, Judge Lopez, about the Monday, Tuesday, Wednesday. But, again, that runs right into the face of the problem of the money laundering prohibition is aimed at avoiding that. Now, if we had a problem, if there was some concern, like in Wright, that we didn't actually have at least $10,000 of criminally-derived property, then we might have an issue here. But we have, again, well above that in this case. And on the flip side, I guess you're saying if this was a case in which she had some independent stream of income that was large enough to support the purchase of the car, that might call into question whether we could treat this as a commingling case. I think that's right. But here we have more than $10,000 of tainted money going in and no other money that's there other than the use of that money for the gambling proceeds. That's correct. She testified she was fired from her job in May of 2007. That's two full years before the second of the two transactions and a year and a half before the first. So, again, looking at this evidence, all in the light most favorable to the verdict, I think that the necessary conclusion is that this was fraud. And, of course, there's the other problem. They could have disbelieved her testimony as to how much money she lost given the fact that there was no money apparently left at the end of the scheme. And she had the scheme was for more than $2 million. So this is all fact-based, it seems to me. That's right. And, again, because of the standard that we hear on review, this court views those facts favorably to the jury's verdict. Exactly. So am I right as long as the jury could reasonably believe on this record that she was gambling with tainted money, it's game over for the defendant? That's our view, yes. Now, unless there are questions as to some of the other issues, I'm happy to yield the balance of my time to the court. Thank you. Well, I'm obviously sprinting upstream, but let's see what I can do. Getting back to the question of derived from and what that means, in the right, getting back to the right examples, the right hypotheticals, when someone takes a dollar of tainted money, buys a lottery ticket or stock, and then appreciates to a million dollars, then the person sells or catches the lottery ticket or sells that stock. That's the transaction there. That's the transaction. Did that transaction involve more than $10,000 in criminally derived money? Because the seed money, call it that, was $1 of tainted money. Because all of that appreciated money is all of that presumptively tainted. Because that's where this is headed. What the government is arguing is that all of Castoreo's money was tainted. If I understand, that's not the government's argument. The government might argue that in that case. I agree with that. But in this case, what they're arguing is if you're only gambling with tainted money that is itself an amount above the threshold, right, under the statute. It's not $1, but I forget what the threshold is. It's $10,000. $10,001. If that's what you had coming in and all of that's tainted, you can't gamble with that money and then clean it up. And I guess the question is why is that wrong? It's wrong because you're not cleaning it up. The money that was tainted remains tainted. However much money she went to the casino with in dirty money, that's still dirty money. Had she used that money to purchase the cars, there's no problem. It would be game over. But if she takes that money and buys Apple stock or goes to the casino or buys a lottery ticket and makes 10 times or 100 times that money and says, geez, I'm really rich now. I have a lot of money, is all that money tainted? Because that's really what we're saying. That's what the government is saying. Why would Congress adopt a statute like that where It seems like an argument that lacks rationality in terms of the congressional objective. You have a situation where you have conceitedly dirty money that's above the threshold and then the individual, knowing that that money is derived from unlawful activity, uses that money to buy a lottery ticket and win a million dollars and then uses those winnings to engage in some transaction. Why should that cleanse the original illegality, the knowledge that the money used to buy the lottery ticket? Because the transaction in question is the one that comes at the end. The crime here is the transaction, okay, with the elements of knowledge and the criminal divide. The transaction was made possible by the use of proceeds derived from unlawful activity. Your Honor, I know that we've said that Santos was not addressing this particular issue, but that seems completely contrary. Santos said that proceeds in this context means either receipts or profits. It doesn't mean the receipts or the profits or whatever money you make with the receipts or the profits. That's the issue. I think you're butting up against the presumption of innocence now, which is exactly what the government argued to the jury. It doesn't matter. The money's all tainted, period. Any money that Castrillon spent, and remember, this wasn't her dad's money. It was Castrillon's money. Could the jury on the evidence, which was before the jury, just disbelieve her? They could, Your Honor, but that's a sufficiency argument. I only make that to count 33. These are other errors during the trial. You don't assume everything in favor of the prosecutor when you're looking at the trial error. If I understand your argument, construction is irrelevant. Construction is relevant? Irrelevant. Because what you're saying is that even under the precinct, are you saying that the inclusion of the word indirectly now means Congress, for the first time it dawned on them that they would like to stop people from gambling with tainted money? What I'm saying is that they've got language in there, Your Honor. And that's because before they allowed people to gamble with tainted money, but now they've decided you shouldn't gamble. There's no explanation for where I'm— And that's the logic of the position, right? That before the change, they allowed you to gamble with tainted money, and after the change, you can't. Correct? No, I don't—I'm sorry. Before the change, you could— Well, the erroneous instruction only matters if before the statute that existed before protected your client. Right. Well, that means that what you're saying is Congress, prior to the change, allowed you to gamble with tainted money, and for some reason, after reading the Santos decision, decided you shouldn't be able to gamble with tainted money. That just seems like a surprising— Well, it's clear that the FARA was a reaction to Santos. There's no question about that. Why Congress picked this particular language, that's not entirely clear. But the point of this case is that language, that indirectly language, was what was used by the prosecutor. That's why the change in the statute is so significant, because that was not in the prior statute. That's how the jury was instructed. But you can see going forward, you can't gamble with tainted money because of indirectly. I have not seen any cases on that, but I would say it's certainly—if I'm on the jury, and I hear from the judge, I hear from the prosecutor that all this money was tainted. You don't even have to worry about that. It's all tainted. And then the judge tells me that it's tainted if it's directly or indirectly derived from this criminal activity. I think that is—that's the end of it. Now, whether some court will come back and say that can't be what Congress intended, I don't know. But thank you very much. Thank you. Are there any other questions? Thank you.